DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| CARLYLE BRYAN, JULIE BEBERMAN, and CHARLES FRANCIS, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil No. 2010-66 |
| UNITED STATES OF AMERICA and CUSTOMS AND BORDER PROTECTION OFFICERS JOHN MAZUR, JAMIE DEMARAIS, OBED TORRES, GREGORY DeFELICE, WILLIAM SANTIAGO, ORLANDO BAEZ and TIMOTHY OGG, ANDRES VAZQUEZ, JOEL OSORIO, and JUAN GRACIA OF THE DEPARTMENT OF HOMELAND SECURITY, BUREAU OF CUSTOMS AND BORDER PROTECTION, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION REGARDING PROTECTIVE ORDER**

THIS MATTER comes before the Court on the United States of America's (the "Government") Motion for Entry of Protective Order (DE 99). Initially, plaintiffs opposed a protective order (DE 109). Later, however, plaintiffs stated they "withdraw their objection to the general proposition of an umbrella protective order" (DE 126), although they continue to dispute one aspect of the Government's proposed order.

**I.      PROCEDURAL HISTORY**

This lawsuit is an outgrowth of the search of plaintiffs' cabins aboard a cruise ship by Customs and Border Protection ("CBP") agents in September 2008. The Government sought a protective order on the grounds that "[m]any of the discovery documents in this case contain confidential and sensitive information covered by the law enforcement privilege and the Privacy

*Bryan v. United States*
Civil No. 10-66
Page 2

Act." (DE 99 at 1). The Government indicated that the parties "were unable to reach a stipulation [concerning entry of the order] because of a dispute regarding the use of confidential information in other actions against the government," which would be wholly prohibited by the Government's proposed order. (DE 99 at 2; DE 99-1, ¶ 1(c)).

As noted, plaintiffs initially opposed a protective order, arguing that the Government (1) had not shown good cause for the issuance of an "umbrella protective order," (2) would "over-designate" material to be protected, and (3) did not submit an affidavit by the head of the agency specifically designating and describing the documents claimed to be privileged. (DE 109 at 2-5). Plaintiffs also asserted that one "purpose of the Government's Motion [] is to prevent [plaintiff Julie] Beberman from using the exculpating deposition testimony" produced during discovery in this case to "clear her name," and to seek to remove from the Government's law enforcement database ("TECS database") information linking her to a drug smuggling operation in St. Thomas. (DE 109 at 6). In that regard, Plaintiffs state that "Ms. Beberman had produced copies of the TECS database entries to her employer, the U.S. Department of State," and that Ms. Beberman "has filed a claim under the DHS TRIP system to seek the removal of this TECS record." *Id.*

On February 23, 2012, the Government submitted two affidavits in support of its motion. In the first Affidavit, Kevin K. McAleenan, Acting Assistant Commissioner, CBP Office of Field Operations, averred that plaintiffs' requested production of various documents related to the TECS database, officer training, border search policies, and methods used to detect smugglers, were covered by the law enforcement investigatory privilege. He detailed how disclosure of such documents would reveal CBP's confidential law enforcement techniques, methods and procedures. Assistant Commissioner McAleenan stated that revised versions of the TECS

database records would be produced to Plaintiffs that removed some prior redactions of information determined not to be sensitive. He also described how the transcripts of depositions of CBP officers also contained law enforcement sensitive information. (DE 119-1).

The Government also provided an Affidavit by David E. Hoffman, Acting Chief of the Sensitive Security Information Program of the Transportation Security Administration, Department of Homeland Security. (DE 121). Chief Hoffman stated that the information redacted by the Government in the TECS database records included whether plaintiffs did or did not have records in the Terrorist Screening Database ("TSDB") maintained by the Terrorist Screening Center. Mr. Hoffman averred that plaintiffs' status on the TSDB constituted sensitive security information by regulation, the disclosure of which would be detrimental to transportation security. Moreover, he stated, by statute this determination is "exclusively reviewable by a United States Court of Appeals." (DE 121-1 at 3-4).

At the February 24, 2012 hearing on the instant motion and on the pending Motion for Summary Judgment, the Government reiterated that the impediment blocking the parties from reaching a stipulation on the Protective Order remained the language prohibiting discovery materials produced in this case from being used in any other proceeding. Plaintiffs' counsel responded that his clients were sensitive to the Government's concerns about the information; plaintiffs have been operating as if there was a protective order in place; and they did not object if the Court entered an interim protective order that did not contain their requested language permitting them to use the discovery material produced in this case in collateral litigation. Plaintiffs' counsel suggested that the Court could revisit that matter at the end of the trial in this case, and requested ten days to respond to the Government's affidavits in support of the motion. The Court granted that request.

On March 5, 2012, Plaintiffs filed a Further Opposition to Motion for Protective Order, in which they "withdr[e]w their objection to the general proposition of an umbrella protective order," but asserted that "the principal area of contention between the parties remains." (DE 126 at 1). Specifically, Plaintiffs asserted that "the terms of the protective order proposed by the United States are acceptable except for paragraph 1(c) limiting the use of the disclosed information to the instant litigation and the related paragraph 6, requiring the return or destruction of such information, which, as a consequence, would also preclude its use in other matters." *Id.* at 5. Plaintiffs proposed the elimination of paragraph 6[1] and changes to paragraph 1(c) as follows:

> Information or documents designated as "CONFIDENTIAL" under this Order shall not be used or disclosed by the parties or counsel for the parties or any persons identified in subparagraph (d) below for any purposes whatsoever other than *(1)* preparing for and conducting the litigation in which the information or documents were disclosed (including appeals); *(2) providing to any federal government body (including Congress), federal government entity or federal government personnel in the furtherance of any administrative matter, proceeding, or litigation that Plaintiff(s) pursue in good faith, after providing such body, entity or personnel with a copy of this Protective Order; and (3) preparing for and conducting the matter, proceeding or litigation in which the information or documents were disclosed to such body, entity or personnel (including appeals).* ~~All other uses, including litigation uses in connection with other legal actions or matters are strictly prohibited.~~ This Order does not restrict in any manner the use or disclosure by any Producing Party of any information in its own documents and things.

(DE 126 at 6).

---

[1] Paragraph 6 in the Government's proposed Protective Order provides:

> Return of Confidential Material at Conclusion of Litigation. At the conclusion of the litigation, all material treated as confidential under this Order and not received in evidence shall be returned to the originating party. If the parties so stipulate, the material may be destroyed instead of being returned. The Clerk of the Court may return to counsel for the parties, or destroy, any sealed material at the end of the litigation, including any appeals.

(DE 99-1, ¶ 6).

## II.     LEGAL STANDARDS

Protective Orders are governed by Fed. R. Civ. P. 26(c), which provides:

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

\* \* \*

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

Fed. R. Civ. Proc. 26(c)(1)(D). "Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Good cause "is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). The good cause determination "must also balance the public's interest in the information against the injuries that disclosure would cause." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007).

The Government has asserted the law enforcement privilege as grounds to prevent disclosure of many of the discovery materials in this case. The law enforcement privilege is "a qualified privilege designed to prevent the disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." Carter v. City of Philadelphia, 2000 U.S. Dist. LEXIS 6658, at *11 (E.D. Pa. May 5, 2000). Its purpose is well-established:

*Bryan v. United States*
Civil No. 10-66
Page 6

> (1) to prevent the disclosure of law enforcement techniques, procedures, and sources; (2) to protect witnesses and others involved in a law enforcement investigation; and (3) to prevent interference with an investigation. In advancing its purposes, Courts must balance the public interest in confidentiality of government information against the needs of a litigant to obtain data.

*Roggio v. FBI*, 2011 U.S. Dist. LEXIS 28641, at *7 (D.N.J. Mar. 18, 2011) (citations omitted).

The law enforcement privilege "must be asserted by the head of the agency claiming the privilege after he or she has personally reviewed the material and submitted precise and certain reasons for preserving the confidentiality of the communications." *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1210 (D.N.J. 1996) (citing *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980)). The Government provided those affidavits (DE 119-1, 121-1).

### III. ANALYSIS

The Court finds, based upon the materials presented, that the Government has carried its burden of demonstrating the appropriateness of a protective order based on the law enforcement privilege. Plaintiffs do not oppose, in general, the entry of a protective order. The question remains whether Plaintiffs are entitled to language in the protective order that would allow them to use information discovered in this action in any other proceeding, even one against the Government or any of its agencies or subdivisions.

Plaintiffs mention, in passing, that Ms. Beberman "filed a claim under the DHS TRIP system to seek the removal of this TECS record." (DE 109 at 6).[2] Plaintiffs have not explained, however, why material discovered in this proceeding, protected by the law enforcement

---

[2] Plaintiffs attached as an exhibit a letter from the Department of Homeland Security to Ms. Beberman which is a response to her submission of a "Traveler Inquiry Form and identity document" to the DHS Traveler Redress Inquiry Program (DHS TRIP). (DE 126-3). The letter explains that DHS "researched and completed our review of your case," and that security procedures mandate DHS "can neither confirm or [sic] deny any information about you which may be within federal watchlists or reveal any law enforcement sensitive information." *Id.* However, DHS has made "any corrections to records that our inquiries determined were necessary. . ." *Id.*

*Bryan v. United States*
Civil No. 10-66
Page 7

privilege, may be relevant to the DHS TRIP proceeding, which appears to have run its course. (*See* DE 126-3). In addition, although plaintiffs have suggested that they may file other proceedings[3] against the Government, at this time they have identified no such actions that have been filed. (*See* DE 126 at 5: "Such limitation [use of discovered materials only in the instant litigation] is overly restrictive to the Plaintiffs who seek the use of such information in *future administrative matters, proceedings, and litigation involving the federal government*.") (emphasis added). The Court thus finds that plaintiffs simply have not placed sufficient information before the Court that would permit the Court to evaluate their narrow objection to the protective order; an order they now do not otherwise challenge. Moreover, the proposed order provides a mechanism for challenging the protection with respect to any particular information (*see* DE 99-1, ¶ 3), and plaintiffs could seek to modify the order under appropriate circumstances in the future. In these circumstances, the balance weighs in favor of the protections for the confidentiality of these materials, when measured against the immediate needs of the plaintiffs.

Accordingly, the Court **GRANTS** the Government's motion for a protective order. (DE 99). Documents and information previously produced pursuant to the parties' understanding (and representations to the Court) that such would be maintained in accordance with a protective order to be entered, shall continue to be maintained as if produced under the Protective Order, which shall be entered by separate order.

**Dated:** October 30, 2012                           S\_____
                                                                              **RUTH MILLER**
                                                                              United States Magistrate Judge

---

[3] At the hearing on February 24, 2102 plaintiffs represented that certain information had been disclosed to the Department of State, and that a FOIA request had been submitted using some of the records produced in this case.