**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

CARLYLE BRYAN, JULIE BEBERMAN,  )
and CHARLES FRANCIS,  )
 )
*Plaintiffs,*  )
 )
v.  )        **Civil Action No. 2010-0066**
 )
UNITED STATES OF AMERICA, and  )
CUSTOMS AND BORDER PROTECTION  )
OFFICERS JOHN MAZUR, JAMIE  )
DEMARAIS, OBED TORRES, GREGORY  )
DeFELICE, ORLANDO BAEZ,  )
TIMOTHY OGG, ANDRES VAZQUEZ,  )
JOEL OSORIO, and JUAN GRACIA,  )
OF THE DEPARTMENT OF HOMELAND  )
SECURITY, BUREAU OF CUSTOMS  )
AND BORDER PROTECTION,  )
 )
*Defendants.*  )
_____)

**David M. Nissman, Esq.,**
St. Croix, U.S.V.I.
        *For Plaintiffs*

**Joycelyn Hewlett, Esq.,**
St. Thomas, U.S.V.I.
        *For Defendants*

<u>**MEMORANDUM OPINION AND ORDER**</u>

**Lewis, Chief Judge**

        THIS MATTER comes before the Court on the Order issued by Magistrate Judge Ruth

Miller, on August 22, 2016 (the "August 2016 Order") (Dkt. No. 162), informing the parties of the

Court's intention to unseal documents in this case that had been placed under seal pursuant to the

terms of a Protective Order entered on October 30, 2012. (Dkt. No. 156). The August 2016 Order

also directed the parties to identify the specific information, if any, that should be kept under seal

(by docket number, page number, and line number), and to provide both factual and legal support

for each request. On September 9, 2016, Defendants filed a Response to the August 2016 Order in which they specified the documents, or parts thereof, that they requested to be kept under seal. (Dkt. No. 165). Plaintiffs did not file a response to the Court's Order.

For the reasons set forth below, the Court will order unsealed the documents or portions thereof that Defendants have identified as no longer needing to remain sealed, and order unsealed other documents or portions thereof that the Court has also determined should be unsealed. A third group of documents will remain under seal in their entirety.

## I.   PROCEDURAL HISTORY

Plaintiffs Carlyle Bryan, Julie Beberman, and Charles Francis took a cruise aboard the M/V Adventure of the Seas that began on August 31, 2008 in San Juan, Puerto Rico, stopped at several foreign ports, returned to the United States through St. Thomas, Virgin Islands, and ended in San Juan on September 8, 2008. While in St. Thomas, Plaintiffs' passenger cabins were searched by Customs and Border Protection ("CBP") officers. Plaintiffs filed suit, asserting claims under the Federal Tort Claims Act and *Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).

Defendants filed a Motion to Dismiss as well as a Motion for Summary Judgment on which the Court expects to issue rulings shortly. However, most of the filings relating to the Motions are currently under seal pursuant to a Protective Order entered on October 30, 2012. (Dkt. No. 156). The issue before the Court is whether the documents sealed pursuant to that Protective Order shall remain under seal at this stage of the litigation.

This case began in July 2010 with the filing of Plaintiffs' Complaint. (Dkt. No. 1). Defendants responded with the Motion to Dismiss in November 2010 (Dkt. No. 10), and Plaintiffs filed an Amended Complaint in April 2011. (Dkt. No. 38). Defendants again responded with a Motion to Dismiss (Dkt. No. 50), and discovery began in earnest.

The issue of sealing documents in this case was first raised in September 2011, when Defendants filed an Emergency Motion to Seal. Defendants explained that, during discovery, they turned over to Plaintiffs documents marked "confidential" that contained sensitive information; there was no protective order in place sealing that information; and Plaintiffs had attached some of those confidential documents to a filing (docket number 81) on the public docket. (Dkt. No. 84). Plaintiffs filed a Notice of No Objection to the Emergency Motion, and the Court granted the motion to seal docket number 81. (Dkt. No. 89). Defendants then filed a motion seeking permission to file under seal the Statement of Material Facts accompanying their Motion for Summary Judgment (Dkt. No. 91), and the Court granted that motion (Dkt. No. 92), allowing Defendants' Statement of Material Facts and the twenty-three exhibits attached thereto to be filed under seal. (Dkt. No. 97). Meanwhile, numerous other documents with attached exhibits were being filed on the public record by both parties.

In October 2011, Defendants filed a Motion for a Protective Order. (Dkt. No. 99). They stated that they were unable to arrive at an agreement with Plaintiffs concerning disclosure of additional discovery documents, asserting that many of those documents "contain information that would, if disclosed, compromise the Government's enforcement, investigation, or security activities at the U.S. border, or aid in the circumvention of same." *Id*. at 1-2. Defendants later filed affidavits in support of their Motion from Kevin McAleenan, Acting Assistant Commissioner, CBP Office of Field Operations (Dkt. No. 119), and David E. Hoffman, Acting Chief of the Sensitive Security Information Program, Transportation Security Administration (Dkt. No. 121). The McAleenan Affidavit generally described how the CBP's mission was dependent on the use of sensitive investigative techniques and methods that were not known by the general public, and requested that certain categories of materials filed in this case be covered by a protective order— records from the Treasury Enforcement Communications System ("TECS") database; CBP

directives, policy instructions, standard operating procedures, and training records; and CBP officer testimony. (Dkt. No. 119-1). In October 2012, Magistrate Judge Ruth Miller granted the Motion for Protective Order (Dkt. No. 155) and issued the Protective Order which permitted all documents or information designated confidential to be filed under seal. (Dkt. No. 156).

In December 2012, Defendants filed a Motion to Seal (Dkt. No. 157), in which they asked that the following documents and attachments be sealed in their entirety pursuant to the Protective Order: (1) Dkt. No. 56, Opposition to Motion to Dismiss First Amended Complaint (with four attached exhibits); (2) Dkt. No. 95, Defendants' Brief in Support of Motion for Summary Judgment; (3) Dkt. Nos. 96 and 97, Defendants' Statement of Material Facts About Which There Is No Genuine Issue (with twenty-three attached exhibits); (4) Dkt. Nos. 103 and 104, Plaintiffs' Opposition to Motion for Summary Judgment (with two attached exhibits); (5) Dkt. No. 107, Notice of Filing Exhibits to Plaintiffs' Response to Defendants' Statement of Material Facts, with twenty-three attached exhibits; (6) Dkt. No. 108, Notice of Filing Exhibits to Plaintiffs' Statement of Material Facts in Support of Opposition to Motion for Summary Judgment (with twenty-two attached exhibits); (7) Dkt. No. 111, Defendants' Reply to Plaintiffs' Opposition to Motion for Summary Judgment; (8) Dkt. No. 112, Defendants' Reply to Plaintiffs' Statement of Material Facts in Support of Opposition to Motion for Summary Judgment (with eight attached exhibits); (9) Dkt. No. 119, First Notice of Filing Affidavit in Support of Motion for Entry of Protective Order (with one attached exhibit); (10) Dkt. No. 120, Plaintiffs' Motion in Limine; (11) Dkt. No. 126, Plaintiffs' Further Opposition to Motion for Protective Order (with four attached exhibits); (12) Dkt. No. 129, Defendants' Motion to Strike Plaintiffs' Motion in Limine and Opposition to the Motion; and (13) Dkt. No. 130, Plaintiffs' Motion for Extension of Time to Conduct Further Discovery before Replying to Opposition to Defendants' Motion in Limine (with one attached

exhibit). Plaintiffs did not oppose Defendants' Motion to Seal, and Magistrate Judge Miller granted it. (Dkt. No. 158).[1] The documents have remained under seal since that time.

The Court is currently preparing to issue rulings on Defendants' Motion to Dismiss and Motion for Summary Judgment, where most of the underlying documents are sealed. In order to make its Memorandum Opinion intelligible, and not have to redact large sections of it due to the inclusion of information from documents that are now under seal, the August 2016 Order was issued to determine the parties' current positions on the continued sealing of the previously sealed documents. Plaintiffs did not respond to the Court's Order. Defendants' rationale for the continued sealing of certain documents or parts thereof is that the documents contain "sensitive and privileged law enforcement material"—information that is "valuable to the protection of the United States' border, the security and integrity of interagency law enforcement communications, and the safety and privacy of individual CBP officers, travelers, agents, and investigations, with particular ramifications for the interdiction of maritime smuggling in the U.S. Virgin Islands and Puerto Rico." (Dkt. No. 165 at 1, 2). Defendants state that the sealed material was generated as a result of Plaintiffs' discovery demands that "consisted of detailed questions and hypothetical scenarios about law enforcement techniques, and methods and resources used by U.S. Customs and Border Protection to interdict maritime drug smuggling." *Id.* at 1.

Among the documents that Defendants request to remain under seal in their entirety are screenshots of TECS records found in Dkt. Nos. 97-6, 107-16, 107-18, 108-16, and 108-18. They also ask that CBP official documents, including a CBP Customs Directive (Dkt. No. 107-21, filed again at Dkt. No. 108-21); Standard Operating Procedures for the Seaport Passenger Analysis Unit

---

[1] Magistrate Judge Miller noted that Dkt. Nos. 96, 97, and 103 were already under seal. (Dkt. No. 158). However, the remaining documents had all been on the public record for varying periods of time up to as long as two years.

("PAU") (Dkt. No. 97-15); a list of "Seaport PAU Targets" (Dkt. No. 97-16, filed again at Dkt. No. 107-22 and Dkt. No. 108-22) remain completely under seal. Although the TECS records are redacted, Defendants assert that the layout, labels, response codes, order, format and relative size of the response fields, as well as the information contained therein, relate to law enforcement operations, methods, techniques and procedures, and that disclosure of that information would reveal sensitive and confidential information. (Dkt. No. 165 at 9). Defendants contend that the official CBP documents must remain under seal as well because they describe law enforcement techniques used by CBP officers in screening individuals crossing the border. *Id.* at 4. The final category of documents that Defendants assert should remain completely under seal are certain materials produced during the discovery process, given that case law indicates there is no public right of access to these documents. *Id.* at 3.

Defendants also ask that certain portions of the moving papers related to the Motion for Summary Judgment and Motion to Dismiss, and certain portions of attached exhibits remain under seal (*i.e.,* be filed in partially redacted form) so as not to reveal sensitive information. Included in this group is deposition testimony of Plaintiffs and individual Defendants that allegedly details the decision-making process of CBP officers in screening passengers and conducting border searches; describes what occurred during the search at issue; discusses the content and usage of subject-specific TECS records; and describes law enforcement techniques used in the screening of individuals and factors relevant to such screening. *Id., passim.*

## II.   DISCUSSION

### A.  Applicable Legal Principles

With regard to sealing court documents, it is "well settled" in the Third Circuit that

there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records. The public's right of access extends beyond simply the ability to attend open court proceedings. Rather, it envisions 'a pervasive

6

common law right to inspect and copy public records and documents, including judicial records and documents.' *Leucadia, Inc. v. Applied Extrusion Tech., Inc.,* 998 F.2d 157, 181 (3d Cir. 1993).

*Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192 (3d Cir. 2001) (internal citation omitted). In *Littlejohn v. BIC Corp.*, 851 F.2d 673 (3d Cir. 1988), the Third Circuit explained how this right of public access strengthens confidence in the courts:

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court. As with other branches of government, the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

*Id.* at 678 (citations omitted). In a similar vein, "[a]ccess to civil proceedings and records promotes public respect for the judicial process and helps to assure that judges perform their duties in an honest and informed manner." *Leucadia,* 998 F.2d at 161 (citations and internal quotations omitted). Both Supreme Court and Third Circuit case law consider public access to court proceedings as '"one of the numerous 'checks and balances' of our system, because *contemporaneous review* in the forum of public opinion is an effective restraint on possible abuse of judicial power.'" *Repub. of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660-61 (3d Cir. 1991) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 592 (1980)). The "contemporaneous review" factor "supports access at the very least by the announcement of the district court of its decision, absent persuasive countervailing interests." *Id.* at 661. "[P]roviding the 'public an opportunity to assess the correctness of the judge's decision' was an important justification for allowing public access." *Id.* (quoting *In re Petroleum Prods. Litig.*, 101 F.R.D. 34, 43 (C.D. Cal. 1984)).

The right to public access attaches to documents filed with the court in conjunction with a request for adjudicatory relief, *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.,*

800 F.2d 339, 343 (3d Cir. 1986), since such documents "must be presumed to have entered into the public domain." *Mine Safety Appliances Co. v. N. River Ins. Co.*, 73 F. Supp. 3d 544, 559 (W.D. Pa. 2014) (citing *Leucadia*, 998 F.2d at 161-62, which provides that "the filing of a document gives rise to a presumptive right of public access."). That right of access applies, in particular "to documents and evidentiary materials submitted in support of summary judgment" because "the need for public scrutiny is at its zenith when the motion is dispositive[.]" *Id.* (citing *Repub. of the Philippines*, 949 F.2d at 660-61). This right attaches both when the dispositive motion is granted, thereby ending the litigation, and when it is denied "because the ruling tends to shape the scope and substance of the litigation as the parties proceed to trial." *Id.* (citing *Repub. of the Philippines*, 949 F.2d at 660; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (the strong presumption in favor of public access applies with particular force to judicial records relating to summary judgment because those proceedings adjudicate the substantive rights of parties and often serve as a substitute for trial); and *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.,* 2013 WL 1336204, at *10-11 (W.D. Pa. Mar. 29, 2013) (documents filed with the court and incorporated or integrated into the court's adjudicatory proceedings are subject to the heightened standards mandated by the common law presumption of public access)).

Thus, in order to seal documents filed in support of dispositive motions, the proponent must satisfy a "higher standard" than required for entering a protective order and must shoulder a "heavier burden." *Mine Safety*, 73 F. Supp. 3d at 564 (citing *Carnegie Mellon Univ.*, 2013 WL 1336204, at *4). At the very least, a party seeking to seal part of the judicial record at such a stage in the litigation "bears the burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Cendant,* 260 F.3d at 194 (internal quotation marks omitted); *see also Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (same, describing the burden as "heavy");

*Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (observing that "compelling reasons" must be shown to seal judicial records attached to a dispositive motion, even if the dispositive motion or its attachments were previously filed under seal or protective order) (internal quotation marks omitted).

Although the common law right to public access predates the Constitution, *Bank of Am. Nat'l Trust & Sav. Ass'n,* 800 F.2d at 343, courts have also recognized that "the right is not absolute," *Littlejohn,* 851 F.2d at 678, and that the presumption of public access may be rebutted. *In re Cendant Corp.*, 260 F.3d at 194. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Littlejohn*, 851 F.2d at 678 (quoting *Nixon v. Warner Comm'ns, Inc.* 435 U.S. 589, 598 (1978)). Thus, the "strong common law presumption of access must be balanced against the factors militating against access." *Id.* (internal quotation marks omitted).

Generally, documents elicited during discovery are exempt from public access. *See United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007) ("[D]ocuments filed with the court are generally subject to the common law right of access, unless attached to a discovery motion."); *Leucadia*, 998 F.2d at 165 ("There is a presumptive [common law] right to public access to all material filed in connection with nondiscovery pretrial motions, whether these motions are case dispositive or not, but no such right as to discovery motions and their supporting documents."); *Bank of Am. Nat'l Trust & Sav. Ass'n*, 800 F.2d at 343 ("discovery. . . which is ordinarily conducted in private, stands on a different footing than does a motion filed by a party seeking action by the court."); *Mine Safety Appliances Co*, 73 F. Supp. 3d at 559 (because "discovery is not undertaken as part of the public component of civil adjudication," the presumption of public access does not attach). Entry of a protective order during the discovery process, however, "does not assure that information initially designated as confidential and thereafter filed under seal will continue to remain secret."

*Id.* at 562. If later challenged, the proponent must make a "particularized showing of the need for continued secrecy if the documents are to remain under seal." *Id.* (quoting *Leucadia*, 998 F.2d at 166).

### B. Analysis

As indicated above, the Court is preparing to rule on both the pending Motion to Dismiss and Motion for Summary Judgment. Most of the moving papers and attached exhibits for the Motion for Summary Judgment, for both parties, are currently under seal pursuant to the Protective Order. (Dkt. Nos. 95, 97, 104, 107, 108, 111, 112). The Motion to Dismiss and the Reply are not under seal, but Plaintiff's Opposition (Dkt. No. 56) and attached exhibits are sealed. Many of the facts that the Court will rely on to adjudicate those motions are contained in sealed documents. In order that its Opinion will not be so redacted by reference to sealed documents that its reasoning becomes unintelligible, the Court must now balance the common law right to public access with "factors militating against access," *In re Cendant Corp.*, 260 F.3d at 194—*i.e.*, whether the law enforcement privilege that provided the rationale for sealing the documents pursuant to the Protective Order continues to apply or overcomes the presumption in favor of public access at this stage of the litigation.

Defendants responded to the Court's August 2016 Order by dividing the currently sealed documents into three categories: (1) documents which Defendants do not object to being unsealed; (2) documents which Defendants argue must be kept entirely under seal; and (3) documents which Defendants argue should be partially unsealed—*i.e.*, filed in redacted form.

### 1. Category I – Documents to which There Is No Objection to Unsealing

First, Defendants have no objection to unsealing certain documents: Dkt. Nos. 97-1, 97-2, 97-3, 97-4, 97-5, 97-7, 97-8, 97-12, 97-13, 97-17, 97-22; Dkt. No. 104; Dkt. No. 107, Dkt. Nos. 107-1, 107-2, 107-3, 107-4, 107-5, 107-6, 107-7, 107-14, 107-15, and 107-17; Dkt. No. 108, Dkt.

Nos. 108-1, 108-2, 108-3, 108-4, 108-6, 108-7, 108-14, 108-15, 108-17; Dkt. No. 112-1, 112-2, 112-6; Dkt. No. 119; Dkt. No. 126-1, 126-2, 126-4; Dkt. No. 130-1; and Dkt. No. 131.[2] The Court will therefore order the Clerk's Office to unseal these specific documents.

### 2. Category II – Documents Kept Entirely Under Seal

The second category includes documents that Defendants request to keep entirely under seal. These documents include: a Customs Directive regarding TECS data, Dkt. Nos. 107-21, repeated at Dkt. No. 108-21; Seaport PAU Targets, Dkt. No. 97-16, repeated at Dkt. No. 107-22 and Dkt. No. 108-22; SEA-PAU Standard Operating Procedures, Dkt. No. 97-15; Seaport Worksheet, Dkt. No. 108-18[3]; and screen shots and other representations of TECS records, Dkt. Nos. 56-1, 56-2, 56-3, 56-4, 97-6, 107-16, 107-18, 107-20, 108-16, and 108-20.

The internal CBP documents describe administrative and operational aspects of the TECS system and the Passenger Analysis Unit, and describe actions to be taken by CBP officers at specific ports of entry in furtherance of investigation and enforcement efforts at the border. The Court agrees that this information—with one "deemed unsealed" caveat, explained below—contains law enforcement sensitive material and should remain under seal.

Similarly, the TECS records and screenshots, even redacted, show the kind of information collected on this law enforcement database related to border security. TECS is "'a fundamental law enforcement tool,' for which 'there is a great need to defend . . . against any threatened or real risk of threat or compromise, not only in order to ensure the continuance of CBP's mission, but in order to assist the other law enforcement agencies which TECS may support.'" *Strunk v. U.S.*

---

[2] More specifically, Defendants did not include these documents on the lists of those they wished to keep sealed or partially sealed, thereby implicitly agreeing that they could be unsealed.

[3] While Defendants characterize Dkt. No. 108-18 as a "Seaport Worksheet" (Dkt. No. 165 at 13), it is actually a TECS screenshot.

*Dep't of State*, 905 F. Supp. 2d 142, 148 (D.D.C. 2012) (internal quotation marks omitted). Defendants assert that disclosure of this information "would allow persons to devise strategies, designed to circumvent the law enforcement methods and procedures (including for examination and inspection) developed by CBP." (Dkt. No. 165 at 9). The Court agrees, and finds that the public interest is served by keeping the screenshots and general format of the TECS reports confidential, and will order that they remain under seal—with a "deemed unsealed" caveat, explained below.

In addition, as part of this second category, Defendants argue that because there is no presumptive right to public access of documents filed in connection with discovery motions, the following documents should remain under seal: "Plaintiffs' Reply to Defendants' August 9, 2011 Response to Plaintiffs' 'Motion to Compel'" (Dkt. Nos. 81 and 81-1); First Notice of Filing Affidavit in Support of Motion for Entry of Protective Order (Dkt. Nos. 119, 119-1); Plaintiffs' Motion in Limine (Dkt. No. 120); Plaintiffs' Further Opposition to Motion for Protective Order (Dkt. Nos. 126, 126-1, 126-2, 126-4)[4]; Federal Defendants' Motion to Strike Plaintiffs' Motion in Limine and Opposition to the Motion (Dkt. No. 129); and Plaintiffs' Motion for Extension of Time to Conduct Further Discovery (Dkt. Nos. 130, 130-1). Third Circuit case law supports this position. *See Wecht*, 484 F.3d at 209; *Leucadia*, 998 F.2d at 165. Thus, the Court will order that these documents remain under seal in their entirety.

### 3.  Category III – Documents to be Partially Unsealed and Refiled in Redacted Form

The third category concerns documents that Defendants seek to keep partially sealed. Included in this group is the memorandum of law in which Defendants stated their reasoning for

---

[4] Defendants had no objection to filing Dkt. No. 126-3 in redacted form. (Dkt. No. 165 at 17).

summary judgment to be granted and their Reply (Dkt. Nos. 95 and 111),[5] and Plaintiffs'
Opposition to the Motion to Dismiss. (Dkt. No. 56). The text that Defendants wish to redact
consists of direct quotes or summaries of information contained in the TECS database concerning
Plaintiffs; CBP Officer Ogg's reasoning for inputting TECS reports on Plaintiffs; and Officer
Ogg's intentions regarding the search of Plaintiffs' cabins. Defendants argue that disclosure of the
"subject-specific" TECS records and Ogg's rationale for entering TECS records on Plaintiffs is
contrary to the public interest, as it would reveal information concerning the tools, techniques,
resources and methods used by CBP officers to screen passengers and determine if and how to
engage in inspectional activities. (Dkt. No. 165 at 4-5, 10-11) (citing Dkt. No. 119-1).

However, as noted earlier, the right to access applies with particular force in connection
with materials associated with dispositive motions. *See Repub. of the Philippines*, 949 F.2d at 660,
*Mine Safety Appliances Co*., 73 F. Supp. 3d at 559. Thus where—as here—a party seeks to
maintain the sealing of filings and exhibits that support Motions to Dismiss and for Summary
Judgment, a careful balancing of the respective interests is critical because "the need for public
scrutiny is at its zenith when the motion is dispositive." *Id.* A heightened standard must therefore
be met with the sealing of documents blocks public access to the Court's reasoning that undergirds

---

[5] Defendants have not sought to keep Plaintiffs' Memorandum of Law in Opposition to
Defendants' Motion for Summary Judgment (Dkt. No. 104) under seal, although it contains much
of the same material that Defendants ask to remain sealed, or redacted, in other documents.
Defendants requested, in their Response, that "[t]o the extent that TECS record content, TECS
screen shots, CBP directives, CBP or port-specific standard operating procedures, the seaport
worksheet, CBP officer training records or law-enforcement sensitive CBP officer testimony
appears in sealed documents not otherwise enumerated above, these materials should remain
sealed" for the reasons set forth in reference to the same documents for which they specifically
requested sealing. (Dkt. No. 165 at 18). The Court rejects such a position, as its August 2016 Order
required the parties to explicitly enumerate what they wanted sealed by document, page and line
number. The Court will not accept a free-standing, catch-all request to seal material that
Defendants did not specify to remain under seal in the manner prescribed in the Court's Order.

its adjudication of the substantive rights of the parties. *Carnegie Mellon Univ.*, 2013 WL 1336204, at *10-11.

Mindful of the important interests at stake, the Court concludes that a surgical approach is appropriate which unseals just those particular portions of the record that are necessary to the Court's adjudication of the substantive rights of the parties and the Court's articulation thereof in its Opinion. In that regard, the Court has determined that the unsealing of certain records or portions thereof is necessary and appropriate.[6]

The Court finds that certain portions of the record must be unsealed in order for the grounds for law enforcement's actions to be understood; the Court's Memorandum Opinion to be intelligible; and the kind of "contemporaneous review in the forum of public opinion" to be available to members of the public. The portions that the Court will unseal are discrete quotes from or summaries of the "status" and "remarks" sections of specific TECS records that refer to Plaintiffs (Dkt. No. 97-6 at 2, 4-6, 11-13, 18, 20-22, 24); deposition testimony that explains what prompted Officer Ogg to input information into the TECS records which prompted the search of Plaintiffs' cabins (Dkt. Nos. 97-14 and 108-9); a snippet from Officer Mazur's testimony (Dkt. No. 108-11); two lines from the fourteen-page Customs Directive (Dkt. No. 107-21); and discrete

---

[6] The Court notes that the Plaintiffs' oppositions to both dispositive motions—some of which was on the public record in this case for up to two years before it was sealed at Defendants' behest—contained a great deal of the factual information that Defendants now wish to keep under seal. For example, Plaintiffs' Opposition to the Motion to Dismiss, which was filed on the public record on June 8, 2011 (Dkt. No. 56), and includes the same quotes from the TECS records concerning each Plaintiff which Defendants are now seeking to keep under seal, was not sealed until May 29, 2013, almost two years after it was filed. Similarly, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, filed on the public record in October 2011 (Dkt. No. 104), along with Plaintiffs' Response to Defendants' Statement of Material Facts and Plaintiffs' Statement of Material Facts (Dkt. Nos. 104-1, 104-2) contains direct quotes and paraphrases from the TECS records, as well as a great deal of additional information that Defendants are seeking to keep under seal. Plaintiffs' Response and accompanying exhibits were not sealed until May 29, 2013, over a year and one-half after it was filed.

excerpts from Plaintiffs' Response to Defendants' Statement of Material Facts (Dkt. No. 104-1) and Defendants' Reply to Plaintiffs' Statement of Material Facts (Dkt. No. 112). These portions of the record, which will be included in the Memorandum Opinion, provide insight into what information was available to a particular CBP Officer—Ogg—regarding these particular Plaintiffs, and how he assessed that particular information which led to the cabin search in this particular case. (Dkt. No. 165 at 9). Where the actions of law enforcement agents are challenged, the agents are generally required to demonstrate that they had a legitimate basis to support their actions. The fact that the search here occurred at the border does not inoculate CBP officers from having to justify their decisions. Indeed, with the advent of *United States v. Whitted*, 541 F.3d 480 (3d Cir. 2008), the Third Circuit has opined that CBP officers are required to possess "reasonable suspicion" when searching passenger ship cabins at the border. Further, the Court must explain the basis for its rulings. Neither the basis for law enforcement's actions nor the underlying reasoning for the Court's ruling—both integral to the adjudication of these Motions—would be able to be discussed publicly if the identified information remains sealed.

The court in *Mine Safety Appliances Co.* articulated the importance of a court's decision being accessible to the public:

> The court's inability to analyze and discuss publically the record advanced for legal rulings on undisputed facts would subject its rulings to uncertainty and render its opinion meaningless with regard to precedential valve. Such an approach is unworkable under our centuries-old system of stare decisis. *Cf. Carnegie Mellon University,* 2013 WL 1336204, *11 n.29 ("This Court's opinion will document any evidence it feels necessary to explain its determination, regardless of the parties' positions on confidentiality. The Court does not issue *"lettres de cachet"* or proceed as a Star Chamber or other prerogative courts. *See In re Oliver,* 333 U.S. 257, 268, 68 S. Ct. 499, 92 L. Ed. 682 (1948). This Court is a function of our collective federal government, sworn to adjudicate cases both for the parties and for the good of the public."); *Mosaid Technologies Inc.,* 878 F. Supp. 2d at 510 ("The parties have sought relief in a public forum" and the court's resolution cannot be based on a discussion that obscures the nature of the parties' dispute or otherwise turns the court into something less than "a transparent forum.") (*quoting In re*

*Eastman Kodak Company's Application,* 2010 WL 2490982, at *1-2 (S.D.N.Y. June 15, 2010).

*Mine Safety Appliances Co.,* 73 F. Supp. 3d at 584-85. Such conditions are no less important here.

Based on the foregoing, the following material will either be "deemed unsealed" or the Court will order it unsealed. This carefully delineated material is essential to set forth the Court's reasoning in its Memorandum Opinion.

1. Certain TECS records (Dkt. No. 97-6 at 2, 4-6, 11-13, 18, 20-22, 24) will be "deemed unsealed" only to the extent that the Memorandum Opinion will quote or summarize discrete sections from them (generally from the status or remarks sections) which are necessary to adjudicate the Motion to Dismiss and the Motion for Summary Judgment. The actual screenshots will remain sealed.

2. The CBP Customs Directive (Dkt. No. 108-21) will be "deemed unsealed" only to the extent that the Memorandum Opinion will quote from page 7, lines 13-14, which is necessary to adjudicate the Motion to Dismiss and the Motion for Summary Judgment. The actual Customs Directive document will remain sealed.

3. The Court will order the Clerk's Office to unseal the motion papers (Motion to Dismiss and Motion for Summary Judgment) that are currently under seal: Dkt. Nos. 56, 95, and 111.

4. The Court will order Defendants to file the following documents with the redactions suggested by Defendants in their Response (Dkt. No. 165), but with the following additional excerpts not redacted:

- Defendants' Statement of Material Facts About Which There Is No Genuine Issue: Dkt. No. 97, paragraphs 4, 17-19, 24, 25, 29-34, 36, 44, 65. (In other words, only paragraphs 35 and 40 will be redacted.)

- Officer Ogg's Deposition Testimony: Dkt. No. 97-14 at pages 11, 14-17, 23-27, 29, 30-31; and Dkt. No. 108-9 at 14, 18, 20.

- Officer Mazur's Deposition Testimony: Dkt. No. 108-11 at 4.

- Plaintiff's Response to Defendants' Statement of Material Facts: Dkt. No. 104-1, ¶ 64.

- Defendants' Reply to Plaintiffs' Statement of Material Facts: Dkt. No. 112, ¶¶ 22-25, 28, 29, 31, 51, 69.

### 4. Remaining Documents

In their Response, Defendants ask that a number of other documents in the record that are not addressed here be filed in redacted form. Generally, the question of whether documents remain under seal is addressed in the context of a challenge to the continued sealing by a party or other entity. *See, e.g., Mine Safety Appliances Co.,* 73 F. Supp. 3d at 562 ("*Upon challenge,* filings made pursuant to a protective order are to be reviewed on a document-by-document basis[.]") (emphasis added). Here, however, there has been no such challenge; the Court is addressing this matter *sua sponte* solely for the purpose of its upcoming ruling. Accordingly, the Court will order Defendants to file in the redacted form that they have suggested those documents that they have addressed in their Response (Dkt. No. 165) that have not otherwise been specifically discussed here: Dkt. Nos. 97-9, 97-10, 97-11, 97-18, 97-19, 97-20, 97-21, 97-23; Dkt. No. 104-2; Dkt. No. 107-8, 107-9, 107-10, 107-11, 107-12, 107-13, 107-19; Dkt. No. 108-5, 108-8, 108-10, 108-12, 108-13, 108-19; Dkt. No. 112-3, 112-4, 112-5, 112-7, 112-8; Dkt. No. 126-3.

### <u>ORDER</u>

For the reasons articulated above, it is hereby

**ORDERED** that:

(1)     The Clerk's Office shall unseal the following documents, currently under seal, to which Defendants have no objection to unsealing: Dkt. Nos. 97-1, 97-2, 97-3, 97-

4, 97-5, 97-7, 97-8, 97-12, 97-13, 97-17, 97-22; Dkt. No. 104; Dkt. Nos. 107, 107-1, 107-2, 107-3, 107-4, 107-5, 107-6, 107-7, 107-14, 107-15, 107-17; Dkt. Nos. 108, 108-1, 108-2, 108-3, 108-4, 108-6, 108-7, 108-14, 108-15, 108-17; Dkt. No. 112-1, 112-2, 112-6; Dkt. No. 131;

(2)   The Clerk's Office shall also unseal the following moving papers: Dkt. Nos. 56, 95, 111;

(3)   The following documents shall remain under seal (no further action is necessary): Dkt. Nos. 56-1, 56-2, 56-3, 56-4; Dkt. No. 97-6, 97-15, 97-16; Dkt. No. 107-16, 107-18, 107-20, 107-21, 107-22, 107-23; Dkt. No. 108-16, 108-18, 108-20, 108-21, 108-22;

(4)   The following discovery-related documents shall also remain under seal (no further action is necessary): Dkt. Nos. 81, 81-1; Dkt. Nos. 119, 119-1; Dkt. No. 120; Dkt. Nos. 126, 126-1, 126-2, 126-4; Dkt. No. 129; Dkt. Nos. 130, 130-1;

(5)   Defendants shall refile the following documents with the redactions suggested by Defendants in their Response (Dkt. No. 165), but the following additional excerpts shall not be redacted:

  a.   Defendants' Statement of Material Facts About Which There Is No Genuine Issue: Dkt. No. 97, paragraphs 4, 17-19, 24, 25, 29-34, 36, 44, 65. (In other words, only paragraphs 35 and 40 will be redacted.)

  b.   Officer Ogg's Deposition Testimony: Dkt. No. 97-14 at pages 11, 14-17, 23-27, 29, 30-31; Dkt. No. 108-9 at 14, 18, 20.

  c.   Officer Mazur's Deposition Testimony: Dkt. No. 108-11 at 4.

  d.   Plaintiff's Response to Defendants' Statement of Material Facts: Dkt. No. 104-1, ¶ 64.

      e.  Defendants' Reply to Plaintiffs' Statement of Material Facts: Dkt. No. 112, ¶¶ 22-25, 28, 29, 31, 51, 69;

(6)    Defendants shall file the remaining documents with the redactions suggested by Defendants in their Response: Dkt. Nos. 97-9, 97-10, 97-11, 97-18, 97-19, 97-20, 97-21, 97-23; Dkt. No. 104-2; Dkt. Nos. 107-8, 107-9, 107-10, 107-11, 107-12, 107-13, 107-19; Dkt. Nos. 108-5, 108-8, 108-10, 108-12, 108-13, 108-19; Dkt. Nos. 112-3, 112-4, 112-5, 112-7, 112-8; Dkt. No. 126-3; and

(7)    In anticipation of the Court's ruling on the pending dispositive motions, Defendants and the Clerk's Office shall have up to and including February 3, 2017 within which to comply with the directives in this Order.

      **SO ORDERED**.

Date: January 27, 2017                      _____/s/_____
                                                WILMA A. LEWIS
                                                Chief Judge